IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

KELLY S., )
 )
        Plaintiff, )
 )
v. ) 1:23CV450
 )
MARTIN J. O'MALLEY,[1] )
Commissioner of Social Security, )
 )
        Defendant. )

## MEMORANDUM OPINION AND RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE

Plaintiff Kelly S. ("Plaintiff") brought this action pursuant to Section 205(g) of the Social Security Act (the "Act"), as amended (42 U.S.C. § 405(g)), to obtain judicial review of a final decision of the Commissioner of Social Security denying her claim for Disability Insurance Benefits ("DIB") under Title II of the Act. The Parties have filed cross-motions for judgment, and the administrative record has been certified to the Court for review.

I.    PROCEDURAL HISTORY

Plaintiff protectively filed an application for DIB on October 29, 2020, alleging a disability onset date of June 8, 2017. (Tr. at 18, 505-06.)[2] Plaintiff's application was denied initially (Tr. at 330-38, 351-55) and upon reconsideration (Tr. at 339-48, 357-61). Thereafter,

---

[1] On December 20, 2023, Martin J. O'Malley was sworn in as Commissioner of Social Security, replacing Acting Commissioner Kilolo Kijakazi. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Martin J. O'Malley should be substituted for Kilolo Kijakazi as Defendant in this suit. No further action need be taken to continue this suit by reason of the last sentence of section 405(g) of the Social Security Act, 42 U.S.C. § 405(g).

[2] Transcript citations refer to the Sealed Administrative Record [Doc. #5].

Plaintiff requested an administrative hearing de novo before an Administrative Law Judge ("ALJ"). (Tr. at 362.) On September 13, 2022, Plaintiff, along with her attorney, attended the subsequent telephonic hearing, at which Plaintiff and an impartial vocational expert testified. (Tr. at 18.) At that time, Plaintiff, through her attorney, amended her alleged onset date to December 12, 2019, the day after a prior, unfavorable decision was issued at the hearing level. (Tr. at 18, 44.) Following the hearing, the ALJ concluded that Plaintiff was not disabled within the meaning of the Act (Tr. at 30), and on April 10, 2023, the Appeals Council denied Plaintiff's request for review of that decision, thereby making the ALJ's conclusion the Commissioner's final decision for purposes of judicial review (Tr. at 1-6).

II. <u>LEGAL STANDARD</u>

Federal law "authorizes judicial review of the Social Security Commissioner's denial of social security benefits." <u>Hines v. Barnhart</u>, 453 F.3d 559, 561 (4th Cir. 2006). However, the scope of review of such a decision is "extremely limited." <u>Frady v. Harris</u>, 646 F.2d 143, 144 (4th Cir. 1981). "The courts are not to try the case de novo." <u>Oppenheim v. Finch</u>, 495 F.2d 396, 397 (4th Cir. 1974). Instead, "a reviewing court must uphold the factual findings of the ALJ if they are supported by substantial evidence and were reached through application of the correct legal standard." <u>Hancock v. Astrue</u>, 667 F.3d 470, 472 (4th Cir. 2012) (internal brackets and quotation omitted).

"Substantial evidence means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." <u>Hunter v. Sullivan</u>, 993 F.2d 31, 34 (4th Cir. 1993) (internal quotation omitted). "It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." <u>Mastro v. Apfel</u>, 270 F.3d 171, 176 (4th Cir. 2001)

2

(internal brackets and quotation omitted). "If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is substantial evidence." Hunter, 993 F.2d at 34 (internal quotation omitted).

"In reviewing for substantial evidence, the court should not undertake to re-weigh conflicting evidence, make credibility determinations, or substitute its judgment for that of the [ALJ]." Mastro, 270 F.3d at 176 (internal brackets and quotation omitted). "Where conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the ALJ." Hancock, 667 F.3d at 472 (internal brackets and quotation omitted). "The issue before [the reviewing court], therefore, is not whether [the claimant] is disabled, but whether the ALJ's finding that [the claimant] is not disabled is supported by substantial evidence and was reached based upon a correct application of the relevant law." Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996).

In undertaking this limited review, the Court notes that "[a] claimant for disability benefits bears the burden of proving a disability." Hall v. Harris, 658 F.2d 260, 264 (4th Cir. 1981). In this context, "disability" means the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death, or which has lasted or can be expected to last for a continuous period of not less than 12 months." Id. (quoting 42 U.S.C. § 423(d)(1)(A)).[3]

---

[3] "The Social Security Act comprises two disability benefits programs. The Social Security Disability Insurance Program (SSDI), established by Title II of the Act as amended, 42 U.S.C. § 401 *et seq.*, provides benefits to disabled persons who have contributed to the program while employed. The Supplemental Security Income Program (SSI), established by Title XVI of the Act as amended, 42 U.S.C. § 1381 *et seq.*, provides benefits to indigent disabled persons. The statutory definitions and the regulations promulgated by the Secretary for determining disability, see 20 C.F.R. pt. 404 (SSDI); 20 C.F.R. pt. 416 (SSI), governing these two programs are, in all aspects relevant here, substantively identical." Craig, 76 F.3d at 589 n.1.

3

"The Commissioner uses a five-step process to evaluate disability claims." Hancock, 667 F.3d at 472 (citing 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4)). "Under this process, the Commissioner asks, in sequence, whether the claimant: (1) worked during the alleged period of disability; (2) had a severe impairment; (3) had an impairment that met or equaled the requirements of a listed impairment; (4) could return to her past relevant work; and (5) if not, could perform any other work in the national economy." Id.

A finding adverse to the claimant at any of several points in this five-step sequence forecloses a disability designation and ends the inquiry. For example, "[t]he first step determines whether the claimant is engaged in 'substantial gainful activity.' If the claimant is working, benefits are denied. The second step determines if the claimant is 'severely' disabled. If not, benefits are denied." Bennett v. Sullivan, 917 F.2d 157, 159 (4th Cir. 1990).

On the other hand, if a claimant carries his or her burden at the first two steps, and if the claimant's impairment meets or equals a "listed impairment" at step three, the claimant is disabled. Mastro, 270 F.3d at 177. Alternatively, if a claimant clears steps one and two, but falters at step three, i.e., "[i]f a claimant's impairment is not sufficiently severe to equal or exceed a listed impairment," then "the ALJ must assess the claimant's residual functional capacity ('RFC')." Id. at 179.[4] Step four then requires the ALJ to assess whether, based on

---

[4] "RFC is a measurement of the most a claimant can do despite [the claimant's] limitations." Hines, 453 F.3d at 562 (noting that administrative regulations require RFC to reflect claimant's "ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis . . . [which] means 8 hours a day, for 5 days a week, or an equivalent work schedule" (internal emphasis and quotation omitted)). The RFC includes both a "physical exertional or strength limitation" that assesses the claimant's "ability to do sedentary, light, medium, heavy, or very heavy work," as well as "nonexertional limitations (mental, sensory, or skin impairments)." Hall, 658 F.2d at 265. "RFC is to be determined by the ALJ only after [the ALJ] considers all relevant evidence of a claimant's impairments and any related symptoms (e.g., pain)." Hines, 453 F.3d at 562-63.

4

that RFC, the claimant can "perform past relevant work"; if so, the claimant does not qualify as disabled. Id. at 179-80. However, if the claimant establishes an inability to return to prior work, the analysis proceeds to the fifth step, which "requires the [Government] to prove that a significant number of jobs exist which the claimant could perform, despite [the claimant's] impairments." Hines, 453 F.3d at 563. In making this determination, the ALJ must decide "whether the claimant is able to perform other work considering both [the claimant's RFC] and [the claimant's] vocational capabilities (age, education, and past work experience) to adjust to a new job." Hall, 658 F.2d at 264-65. If, at this step, the Government cannot carry its "evidentiary burden of proving that [the claimant] remains able to work other jobs available in the community," the claimant qualifies as disabled. Hines, 453 F.3d at 567.

III. DISCUSSION

In the present case, the ALJ found that Plaintiff had not engaged in "substantial gainful activity" since her amended alleged onset date, December 12, 2019. The ALJ therefore concluded that Plaintiff met her burden at step one of the sequential evaluation process. (Tr. at 20-21.) At step two, the ALJ further determined that Plaintiff suffered from the following severe impairments:

> lumbar degenerative disc disease; radiculopathy; right shoulder degenerative disc disease, status-post surgery; right knee degenerative joint disease, status-post surgery, including total knee arthroplasty; chronic pain disorder; migraine; and obesity[.]

(Tr. at 21.) The ALJ found at step three that none of these impairments, individually or in combination, met or equaled a disability listing. (Tr. at 21-22.) Therefore, the ALJ assessed Plaintiff's RFC and determined that she could perform sedentary work with the following, additional limitations:

5

> [Plaintiff] is able to lift up to ten pounds occasionally. She is able to stand/walk for about two hours and sit for up to six hours in an eight-hour workday, with normal breaks. She is unable to climb ladders/ropes/scaffolds, but is occasionally able to climb ramps/stairs, balance, stoop, kneel, crouch, and crawl. She is unable to tolerate exposure to unprotected heights and use of dangerous moving machinery. She is [capable] of frequent overhead reaching and handling with the (dominant) right upper extremity. She is limited to performance of jobs that can be performed while using a hand-held assistive device, such as a cane, required only for uneven terrain or prolonged ambulation of 500 feet or more, and the contralateral upper extremity can be used to lift/carry up to the exertional limits.

(Tr. at 22.) At step four of the analysis, the ALJ determined, based on the above RFC and the vocational expert's testimony, that Plaintiff was unable to perform any of her past relevant work. (Tr. at 28.) However, the ALJ found at step five that, given Plaintiff's age, education, work experience, and RFC, along with the testimony of the vocational expert regarding those factors, Plaintiff could perform other jobs available in the national economy and therefore was not disabled under the Act. (Tr. at 29-30.)

Plaintiff now raises three challenges to the ALJ's decision. First, Plaintiff argues that the ALJ failed to properly apply <u>Albright v. Commissioner of the Social Security Administration</u>, 174 F.3d 473 (4th Cir. 1999) and Acquiescence Ruling ("AR") 00-1(4) when evaluating the prior administrative decision in her case. (Pl.'s Br. [Doc. #9] at 8-9.) Second, she contends that the ALJ failed to consider the combined effects of all of her impairments when assessing her RFC. (Pl.'s Br. at 10-13.) Third and finally, Plaintiff asserts that, even if the ALJ correctly found that Plaintiff's condition substantially improved with treatment, this improvement "did not start to happen until long after the 12-month period required to establish disability had passed." (Pl.'s Br. at 16.) Therefore, Plaintiff argues that "the ALJ should have granted [her] a closed period of disability from December 12, 2019 until she

6

improved sufficiently to resume work." (Pl.'s Br. at 16.) After a thorough review of the record, the Court finds that none of Plaintiff's challenges merit remand.

A. Albright

In her first contention, Plaintiff contends that the ALJ failed to properly explain her reasons for deviating from the RFC findings in a previous administrative decision, dated December 11, 2019. The ALJ expressly considered Albright and AR 00-1(4) when evaluating the prior determination, and correctly noted that, under these directives, adjudicators in subsequent disability claims must consider any prior administrative findings as evidence "and give them 'appropriate weight,' considering such factors as the effects of the passage of time on the continuing applicability of the findings and the extent that evidence not previously considered provides a basis for making a different findings in the subsequent claim." (Tr. at 28.) Here, the ALJ specifically found as follows:

> [I]n an unfavorable decision dated December 11, 2019, [Plaintiff] was found to have a residual functional capacity for light work due to degenerative disc disease and obesity, with non-exertional limitations including an allowance that [Plaintiff] alternate positions between sitting and standing every half-hour while remaining on task. Compared to the prior folder decision, the current claim presents a previously unadjudicated period from the amended alleged onset date through the date of this decision. New and material evidence covering the period at issue in the current folder, including records pertaining to new right shoulder, right knee, and migraine impairments, supports diverging from the findings stated in the prior folder decision to the extent reflected in the above-specified residual functional capacity.

(Tr. at 28) (internal citation to record omitted). This is consistent with Acquiescence Ruling 00-1(4), which implements Albright in the Fourth Circuit. Under AR 00-1(4),

> where a final decision of SSA after a hearing on a prior disability claim contains a finding required at a step in the sequential evaluation process for determining disability, SSA must consider such finding as evidence and give it appropriate

7

weight in light of all relevant facts and circumstances when adjudicating a subsequent disability claim involving an unadjudicated period.

. . . .

. . . In determining the weight to be given such a prior finding, an adjudicator will consider such factors as: (1) whether the fact on which the prior finding was based is subject to change with the passage of time, such as a fact relating to the severity of a claimant's medical condition; (2) the likelihood of such a change, considering the length of time that has elapsed between the period previously adjudicated and the period being adjudicated in the subsequent claim; and (3) the extent that evidence not considered in the final decision on the prior claim provides a basis for making a different finding with respect to the period being adjudicated in the subsequent claim.

Acquiescence Ruling, (Interpreting Lively v. Secretary of Health and Human Services)--Effect of Prior Disability Findings on Adjudication of a Subsequent Disability Claim, AR 00-1(4), 2000 WL 43774, at *4 (Jan. 12, 2000); see also Albright, 174 F.3d at 476.

Plaintiff argues that the ALJ's analysis fails to satisfy the requirements set out in Albright and AR 00-1(4). Plaintiff freely acknowledges that the RFC assessed in this case, which involves a limited range of sedentary work, is significantly more restrictive than the RFC in her previous case, which allowed for a limited range of light work. However, the 2019 RFC included a sit-stand option, which the ALJ in the instant case omitted. Plaintiff contends that the ALJ's failure to provide a specific reason for this departure violates both Albright and AR 00-1(4) and requires remand.

Plaintiff is mistaken. First, the ALJ explained her reasoning for including the more restrictive limitations to sedentary work with a cane for prolonged ambulation, to account for Plaintiff's difficulties in mobility, strength, and endurance. (Tr. at 26.) This was consistent with Plaintiff's testimony that the reason she could not work was because she was unable to stand for 7-hour shifts as a cashier. (Tr. at 21, 48-49.) The ALJ explained that the RFC was

8

significantly less demanding than the work she performed during that recent work attempt. (Tr. at 26.) Thus, the ALJ adopted an even more restrictive RFC and explained the basis for doing so, and the failure to include part of the prior, less-restrictive RFC for light work would not violate <u>Albright</u> or require a remand.

Moreover, even if the ALJ erred by failing to include a sit/stand option, the vocational expert at Plaintiff's hearing testified that a sit/stand option would still be consistent with the sedentary jobs he identified at step five of the sequential analysis, meaning that an individual performing those jobs could typically sit or stand at will at her workstation. (Tr. at 69.) The vocational expert testified that, "[g]enerally speaking," the jobs he identified allowed for sit/stand at will so long as alternating between positions wouldn't take the individual "off task more than 15 percent of the workday." (Tr. at 69.) Specifically, in response to questioning from Plaintiff's attorney, the vocational expert testified as follows:

> Q. Okay. Can that job -- can any of the jobs that you mentioned, is the hypothetical individual able to sit and stand at will?
>
> A. Generally speaking, when we stalk about a sit/stand at will, if it doesn't take this person off task more than 15 percent of the workday, then they can still perform those job duties. If it does take them off task, then I would say there's no job they could perform.

(Tr. at 69.) In clarifying this testimony, Plaintiff's attorney asked as follows:

> Q. Okay. So, if, for example, the hypothetical individual needed to use their cane to be able to get up as well as to sit down, and because of that, it took them a longer period of time than would be acceptable for off task, it would be work preclusive. But if they could hop up and down and they were able to stay on task, it would not be work preclusive. And I don't want to put words in your mouth, but I'm just -- is that what your testimony is?
>
> A. Yes, correct.

9

(Tr. at 69.)

Plaintiff, citing Social Security Ruling ("SSR") 83-12, argues that the ALJ erred by not questioning the vocational expert about the implications of a sit-stand option on the occupational base, and that this omission requires remand. (Pl.'s Reply Br. [Doc. #13] at 3.) As set out in SSR 83-12, "[u]nskilled types of jobs are particularly structured so that a person cannot ordinarily sit or stand at will. In cases of unusual limitation of ability to sit or stand, a [vocational expert] should be consulted to clarify the implications for the occupational base." Program Policy Statement, Titles II and CVI: Capability to Do Other Work--the Medical-Vocational Rules as a Framework for Evaluating Exertional Limitations Within a Range of Work or Between Ranges of Work, SSR 83-12, 1983 WL 31253, at *4 (1983). Notably, in the present case, and in accordance with SSR 83-12, the expert specifically testified that all duties for the jobs he identified at step five could be performed as described in the DOT, so long as positional changes did not take the individual off task for 15 percent or more of the workday. (Tr. at 69.) In other words, the expert found no erosion of the occupational base with the addition of a sit/stand option, based on his experience. (Tr. at 69-70.) Rather, he testified that being off task, for any reason, for more than 15 percent of the workday precluded all work. (Tr. at 69.) Although Plaintiff's attorney insinuated that individuals using a cane to sit and rise may take longer than others to alternate between sitting and standing, Plaintiff presented no evidence that positional changes, or any other impairments or symptoms, would result in her being off task for more than 15 percent of the workday.[5] Further, the RFC in

---

[5] In fact, when assessing Plaintiff's RFC, the ALJ specifically found that "[f]urther alleged or implied limitations, such as a greater need for assistance with standing or walking or an inability to sustain work in any capacity over a full-time schedule, are inconsistent with the circumstances shown in the medical records." (Tr. at 26.)

this case includes the use of a cane "only for uneven terrain or prolonged ambulation of 500 feet or more" (Tr. at 22), not for sitting and rising as Plaintiff's attorney suggested at the hearing, and Plaintiff makes no challenge to this portion of the RFC.

In addition, the prior 2019 RFC determination that Plaintiff contends should have been included in the current RFC under <u>Albright</u> specifically included "a sit/stand option every half hour while remaining on task." (Tr. at 315.) Thus, the prior 2019 determination reflected that Plaintiff was able to work with a sit/stand option while Plaintiff remained on task, and the vocational expert at the present hearing testified that all of the jobs identified could be performed with a sit/stand option that did not require going off task more than 15% of the day. Thus, all of the jobs identified were consistent with the prior RFC that Plaintiff contends should have been adopted or addressed under <u>Albright</u>, and as a result any alleged error is harmless. Accordingly, the Court finds no basis for remand under <u>Albright</u>, AR 00-1(4), or otherwise based on the omission of a sit/stand option from the RFC.

B. Combined impairments

Plaintiff next contends that "[t]he ALJ did not acknowledge [Plaintiff] had lumbar facet disease, myofascial pain, and at least one torn annulus," all of which contributed to her back pain. (Pl.'s Br. at 12.) Plaintiff further argues that "[r]emand is warranted because the ALJ did not explain why she did not consider the effects of [pain from these additional impairments] in determining the weight to give [Plaintiff's] testimony, the opinions of Dr. Burgess," and at other points throughout the sequential evaluation. (Pl.'s Br. at 13.) As noted above, the ALJ identified two back-specific impairments, severe or otherwise, at step two:

11

lumbar degenerative disc disease and radiculopathy. (Tr. at 21.) The ALJ also included chronic pain disorder among Plaintiff's severe impairments. (Tr. at 21.)

As an initial matter, the ALJ's failure to include and/or discuss every alleged impairment at step two of the analysis is not, by itself, a basis for remand.

> Step two is a threshold determination of whether claimants have a severe impairment (or combination of impairments) that meets the twelve-month duration requirement and significantly limits their ability to do basic work activities. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii) (2010). If the Commissioner finds no severe impairments, the claimant is not disabled and the analysis does not proceed to the other steps. Id. However, if a claimant does have a severe impairment or combination of impairments, the ALJ must consider the effects of both the severe and non-severe impairments at the subsequent steps of the process, including the determination of RFC. See 20 C.F.R. § 404.1523 (2010); SSR 96–8p, 1996 WL 374184, at * 5 (1996); SSR 86–8, 1986 WL 68636, at *5 (1986). If the ALJ proceeds to discuss and consider the non-severe impairment at subsequent steps, there is no prejudice to the claimant. See Thomas v. Commissioner, Soc. Sec. Admin., No. SAG–11–3587, 2013 WL 210626, at *2 (D. Md. Jan. 17, 2013) (finding harmless error where ALJ continued with sequential evaluation process and considered both severe and non-severe impairments); Kenney v. Astrue, No. CBD–10–1506, 2011 WL 5025014, at *5 (D. Md. Oct. 20, 2011) (declining to remand for failure to classify an impairment as severe because it would not change the result).

Rivera v. Astrue, No. CBD-12-1095, 2013 WL 4507081, at *7 (D. Md. Aug. 22, 2013) (emphasis omitted). In other words, "[a]s long as the ALJ determines that the claimant has at least one severe impairment and proceeds to discuss all of the medical evidence, any error regarding failure to list a specific impairment as severe at step two is harmless." McClain v. Colvin, No. 1:12CV1374, 2014 WL 2167832, at *4 (M.D.N.C. May 23, 2014).

Here, Plaintiff acknowledges this framework but contends that the ALJ failed to sufficiently consider all of the impairments at later steps of the analysis. In particular, Plaintiff argues that her back pain stemmed from four independent sources, yet the ALJ only considered evidence of discogenic pain. (Pl.'s Br. at 12.) In response, Defendant counters

12

that, "[r]eading the decision as a whole, it is clear that all of Plaintiff's lumbar back impairments, including lumbar facet disease, myofascial pain in her lumbar spine, and a torn annulus at L-4 and L5-S1, have been subsumed in the ALJ's analysis of Plaintiff's lumbar degenerative disc disease." (Def.'s Br. [Doc. #12] at 12) (citing Tr. at 21-28). Indeed, at the hearing in describing the theory of the case and why Plaintiff could not work, counsel for Plaintiff noted that Plaintiff was "suffering from degenerative disc disease, back problems" and "[t]hat has continued." (Tr. at 47.) Counsel then noted new surgeries on her knee and shoulder, and argued that she was unable to work due to problems "that not only are related to her spine, but also the upper and lower extremities." (Tr. at 47.) Thus, counsel for Plaintiff grouped Plaintiff's back impairments together as "degenerative disc disease, back problems." The ALJ likewise referred to Plaintiff's back problems collectively. The ALJ noted that Plaintiff "alleges disability due to musculoskeletal impairments involving the low back." (Tr. at 23.) In addition, the ALJ noted that Plaintiff's "spinal impairment is well documented dating back to the original alleged onset of disability date in June 2017, when [Plaintiff] sustained an injury in a workplace lifting accident." (Tr. at 24.) The ALJ noted the "radiologic and clinical abnormalities related to her spine" (Tr. at 24) and the "lumbar spine imaging" (Tr. at 25), and cited to an MRI reflecting the bulging annulus (Tr. at 1159-60, 1240), an MRI reflecting the annular fissure at L4-L5 (Tr. at 1496), an MRI reflecting annular fissure of the L4-L5 disc with bulge (Tr. at 1102-03), treatment records reflecting facet injections and radiofrequency ablation in the L4-L5 and L5-S1 facets (Tr. at 686, 2028, 2798-802), and treatment records reflecting treatment options for the annular tear (Tr. at 657). The ALJ also noted that treatment included therapeutic injections, citing to facet injections in September and October

13

2021. (Tr. at 24, 2066, 2101.) Counsel for Plaintiff also noted Plaintiff's radiofrequency treatment for her lumbar facet joints (Tr. at 56), and the ALJ considered and discussed that radiofrequency treatment for her "lumbar spine impairment" (Tr. at 25; see also Tr. at 1974, 2028, 2802, 2817). Plaintiff testified regarding medications for her "back pain" (Tr. at 50), and the ALJ noted that she testified that "she has medication she takes as needed for back pain, which causes drowsiness as a side effect when she uses it; she indicated she tries to use her medication sparingly and acknowledged she had not needed it yet the week of the hearing" (Tr. at 23). The ALJ also considered Plaintiff's activities and abilities based on all of her impairments, including her "range of motion, strength, and gait" (Tr. at 25), and relied on the consultative examinations (Tr. at 25-27) and "physical exam notes during the period at issue, which account for the combined effects of all of [Plaintiff's] impairments" (Tr at 22-24). The ALJ also reflected inconsistencies in Plaintiff's assertions (Tr. at 26), and concluded that the RFC accounted for Plaintiff's symptoms and functional limitations in "mobility, strength, and endurance" (Tr. at 26).

Although Plaintiff argues that her diagnoses of lumbar facet disease, myofascial pain, and a torn annulus constitute "objective medical evidence that supports [Plaintiff's] testimony, and a more restrictive RFC that would not allow [Plaintiff] to perform any regular and continuing 8-hour, 5-day [per week] work" (Pl.'s Reply Br. at 5; see also Pl.'s Br. at 10-12), more than a mere diagnosis is required to establish the existence of an impairment, let alone to establish total disability, as Plaintiff now contends. See 20 C.F.R. § 404.1521 ("We will not use your statement of symptoms, a diagnosis, or a medical opinion to establish the existence of an impairment(s)."). Moreover, Plaintiff points to no specific symptoms, other than pain,

caused by these specific diagnoses. To the extent that lumbar facet disease, myofascial pain, and a torn annulus increased the pain otherwise created by her lumbar degenerative disc disease and chronic pain syndrome, the ALJ considered Plaintiff's pain complaints and the evidence as a whole when assessing her RFC, including the specific imaging, treatment, and records related to lumbar facet disease and annular fissure, as set out above. As previously noted in this District:

> Under 42 U.S.C. § 423(d)(2)(B), an ALJ must consider the combined effect of all physical and mental impairments when determining a claimant's disability status. Walker v. Bowen, 889 F.2d 47, 50 (4th Cir. 1989); Hines v. Bowen, 872 F.2d 56, 59 (4th Cir. 1989) (per curiam); Hicks v. Gardner, 393 F.2d 299, 301-02 (4th Cir. 1968). An ALJ must consider "the combined effect of all of the individual's impairments without regard to whether any such impairment, if considered separately" would be of a sufficient medical severity to constitute a "listed impairment." 42 U.S.C. § 423(d)(2)(C); accord 20 C.F.R. §§ 404.1523, 404.1526(a); see also 20 C.F.R. § 404.1525(e) (requiring ALJs to consider all impairments in combination when assessing the residual functional capacity); SSR 96-8p (same). This statutory and regulatory requirement compels the ALJ to consider the cumulative, compounding, or synergistic effect of the claimant's individual impairments instead of "fragmentiz[ing]" them or evaluating them in isolation. Walker, 889 F.2d at 50 ("It is axiomatic that disability may result from a number of impairments which, taken separately, might not be disabling, but whose total effect, taken together, is to render claimant unable to engage in substantial gainful activity."); accord, e.g., DeLoatche v. Heckler, 715 F.2d 148, 150 (4th Cir. 1983); Oppenheim v. Finch, 495 F.2d 396, 398 (4th Cir. 1974); Washington v. Comm'r, 659 F.Supp.2d 738, 745 (D.S.C. 2009); Lemacks v. Astrue, No. 8:07–2438–RBH–BHH, 2008 U.S. Dist. LEXIS 110165, at *10, 2008 WL 2510087 (D.S.C. May 29, 2008), adopted by 2008 U.S. Dist. LEXIS 47350, 2008 WL 2510040 (D.S.C. June 18, 2008). . . .
>
> "As a corollary to this rule, the ALJ must adequately explain his or her evaluation of the combined effect of the impairments." Walker, 889 F.2d at 50. The ALJ must make a "particularized," or "specific and well-articulated," finding regarding the combined effect. Hines, 872 F.2d at 59 ("The ALJ must make a *particularized finding* on the effect of the combination of impairments." (emphasis added)); Cook v. Heckler, 783 F.2d 1168, 1174 (4th Cir. 1986) (stating that the ALJ must make a "*specific and well-articulated finding* as to the effect of the combination of impairments" (emphasis added)). The ALJ may not merely consider each impairment in isolation.

Case 1:23-cv-00450-TDS-JEP   Document 14   Filed 08/29/24   Page 15 of 20

Money v. Astrue, No. 1:08-cv-895, 2011 WL 3841972, at *8 (M.D.N.C. Aug. 26, 2011). In other words, there is no requirement that an ALJ parse out the pain or other symptoms attributable to each of Plaintiff's impairments. Rather, the ALJ must consider the cumulative effect of symptoms from all of Plaintiff's impairments in setting the RFC. Here, Plaintiff argues that the existence of other back impairments may have increased the level of pain she experienced. However, the ALJ considered all of the evidence regarding Plaintiff's back pain and did not limit the consideration to a particular diagnosis. Plaintiff points to evidence that her diagnoses during the relevant time period included lumbar facet disease, myofascial pain in her lumbar spine, and at least one torn annulus, and appears to contend that her mere diagnosis with each of these impairments "supports [her] testimony" as well as "a more restrictive RFC that would not allow [Plaintiff] to perform any regular and continuing 8-hour, 5-day work." (Pl.'s Reply Br. at 5.) However, Plaintiff fails to point to any evidence connecting her diagnoses with a conclusion of total disability, or any evidence not taken into account in the ALJ's analysis of her back pain, and as noted above, the ALJ considered all of the evidence regarding Plaintiff's back impairments in making her evaluation.[6] Plaintiff fails to demonstrate a basis for remand.

---

[6] Plaintiff also submitted later medical records, which likewise note Plaintiff's radiofrequency treatments for her lumbar facet disease:

> Per Dr. O'Toole,
> "We performed RFA lumbar facets because the patient's previous MRI from last year really did not show a whole lot of pathology as regards degenerative disc disease, nerve root impingement etc. we could repeat the patient's MRI lumbar spine to further evaluate if there [ha]s been any change, if it looks similar, then the treatment would be physical therapy, exercise, medication management. I do not have a good explanation as to why the patient is having this much pain based on her objective studies."

(Tr. at 181.)

C. Closed period of disability

In her final challenge, Plaintiff contends that the ALJ erred by failing to consider whether Plaintiff was entitled to a closed period of disability. In examining a claim for disability benefits, an ALJ must evaluate whether a claimant has shown that she was disabled for any consecutive twelve-month period between her onset date and the date of the hearing. See 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). This can include a "closed period" of disability for any consecutive twelve-month period during which the claimant is disabled between the onset date and the date of the hearing, and failure to consider whether a closed period of disability exists may warrant remand. See, e.g., Sykes v. Comm'r, Soc. Sec., No. ELH-16-898, 2017 WL 35436, at *2 (D. Md. Jan. 4. 2017) (collecting cases.)

In the present case, Plaintiff argues that "[t]he ALJ's main reason for finding her not disabled was her supposed improvement in response to surgeries and spinal injections." (Pl.'s Reply Br. at 8.) She further argues that "[t]hese surgeries and injections did not start [until] August 2021, more than 12 months after [Plaintiff's amended alleged] onset date" of December 12, 2019. (Pl.'s Reply Br. at 8.)

Defendant, in turn, correctly argues that ALJs need not make explicit findings regarding closed periods of disability. See Atwood v. Astrue, No. 5:11CV002-RLV-DSC, 2011 WL 7938408, at *6 (W.D.N.C. Sept. 28, 2011) ("The ALJ found that Plaintiff was not disabled at any time from his alleged onset date of May 26, 2006, through the date of his decision. Implicit in this finding is the fact that Plaintiff was not entitled to a closed period of disability at any relevant time." (internal citation omitted)). Moreover, in explaining the basis for Plaintiff's RFC, the ALJ in the present case specifically noted that

> [f]urther alleged or implied limitations, such as a greater need for assistance with standing or walking or an inability to sustain work in any capacity over a full-time schedule, are inconsistent with the circumstances shown in the medical records, including the improvement in [Plaintiff's] symptoms with treatment, the corresponding improvement in her clinical presentation, <u>and the objective medical evidence of at least partially intact clinical signs even prior to her surgeries</u>.

(Tr. at 26) (emphasis added). Thus, contrary to Plaintiff's assertions, it appears that the ALJ did separately consider Plaintiff's condition during this earlier time.

Defendant further argues that Plaintiff, who bears the burden of proving disability, failed to show that she was entitled to benefits for any 12-month period, including the period prior to more aggressive treatments. (Def.'s Br. at 16-18.) Regarding Plaintiff's knee impairment, the ALJ found that Plaintiff's "knee pain and dysfunction significantly worsened with her injury around September 2021 whereas it was less severe before." (Tr. at 25, 2051-52.) The ALJ also noted that, "in July 2022, eight weeks out from her knee replacement, [Plaintiff's] pain and functioning were reportedly improving steadily and she had no specific complaints." (Tr. at 25, 2260.) Similarly, regarding Plaintiff's right-sided upper extremity impairments, the ALJ found that Plaintiff "began seeking treatment for right shoulder and right hand pain, associated with numbness, tingling, and weakness," in June 2021, and that she underwent a right shoulder arthroscopy just two months later, in August 2021. (Tr. at 24, 1097-101, 1114-29, 2112.) Even a cursory review of this evidence reveals that it was not just Plaintiff's treatments that increased in mid-2021; two of Plaintiff's most limiting impairments first emerged during this time.[7] Accordingly, Plaintiff's closed disability period challenge

---

[7] Plaintiff had a previous arthroscopic right knee procedure in December 2020, following the initial onset of right knee symptoms in September 2020. (Tr. at 24.) However, it was not until Plaintiff's meniscal tear in September 2021 that her knee symptoms markedly worsened, necessitating total knee replacement in 2022. (Tr. at 25.)

18

predominantly relies on the severity of her back impairments prior to August 2021.[8] Regarding these impairments, the ALJ correctly noted that imaging of Plaintiff's lumbar spine showed only mild or minimal abnormalities throughout the period at issue. (Tr. at 25, 1105, 1159.) The ALJ also noted the April 2021 consultative examination, which "her gait was steady (although antalgic), motor strength and sensation were intact, she was able to stand on one leg at a time (albeit with assistance), and she was able to perform tandem gait and squat (albeit with some difficulty)." (Tr. at 25, 1086-88.) The ALJ also noted the opinions of the state agency physicians, who concluded in April 2021 and August 2021 that Plaintiff was able to perform light work, but the ALJ found the need for greater limitations based on Plaintiff's subsequent knee and shoulder surgeries. (Tr. at 27, 335-36, 345-47.) The ALJ also relied on the prior administrative findings, which found that, immediately before the time period at issue, Plaintiff remained capable of a limited range of light work. The ALJ based her divergence from the prior decision on "[n]ew and material evidence covering the period at issue . . . , including records pertaining to new right shoulder, right knee, and migraine impairments," which supported a more restrictive, sedentary RFC in the present case. (Tr. at 28.) The ALJ did not find that Plaintiff's back impairments significantly worsened during the more recent period, nor does Plaintiff make this argument. In sum, Plaintiff demonstrates no basis for remand.

---

[8] As recounted in the ALJ's decision, the present case also includes migraine headaches as a new, severe impairment not alleged in Plaintiff's prior claim. (Tr. at 21, 314.) However, this impairment does not appear to feature in Plaintiff's argument for a closed period of disability.

IV. <u>CONCLUSION</u>

IT IS THEREFORE RECOMMENDED that the Commissioner's decision finding no disability be AFFIRMED, that Plaintiff's Dispositive Brief [Doc. #9] be DENIED, that Defendant's Dispositive Brief [Doc. #12] be GRANTED, and that this action be DISMISSED with prejudice.

This, the 29th day of August, 2024.

Joi Elizabeth Peake
United States Magistrate Judge

20

Case 1:23-cv-00450-TDS-JEP   Document 14   Filed 08/29/24   Page 20 of 20